**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| SHERYL RAY AND KIRK RAY, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 3:17-cv-01163-JPG-MAB |
| ) | |
| MYRON KENT WILSON and ) | |
| CELADON TRUCKING SERVICES, INC. ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS' MOTION TO STRIKE INJURY CAUSATION TESTIMONY AND
OPINIONS OF DEFENSE EXPERT, DOUGLAS MORR, P.E.**

COMES NOW Plaintiffs, Sheryl and Kirk Ray, through their undersigned counsel, and for their Motion to Strike Injury Causation Testimony and Opinions of Defense Expert, Douglas Morr, P.E., states as follows:

**I.     INTRODUCTION**

This matter arises out of a motor vehicle collision that occurred on the evening of December 16, 2016. During that time, the St. Louis Metropolitan area was experiencing a severe ice storm. Due to weather conditions, Plaintiff, Sheryl Ray, pulled off onto the shoulder of Interstate-55 in her passenger vehicle. Defendant, M. Kent Wilson, the driver of the tractor-trailer owned by Defendant, Celadon Trucking, continued to operate the vehicle until he lost control and subsequently collided with Ms. Ray's vehicle. The impact pushed Ms. Ray's vehicle into the grassy area beyond the Interstate.

As a result of the collision, Ms. Ray suffered multiple injuries, including injuries to her neck, back and head. She required multiple surgeries, including cervical and lumbar fusions, cervical discectomy, bone graft, and other necessary procedures. During her follow-up care, Ms.

Ray underwent a CT myelogram procedure that caused a spinal fluid leak. The blood patch procedure meant to repair the leak failed and led to her current condition of arachnoiditis and full-body tremors. Ms. Ray never returned to her lucrative career as the vice-president of Advancement at Blackburn College. She is permanently disabled.

Defendants retained biomechanical engineer, Douglas Morr, P.E., who opines that the December 16, 2016 collision did not cause Ms. Ray's neck and back injuries. His findings and opinion testimony overreach into medical causation opinions, despite the fact that Plaintiff's medical expert and treating surgeon, Thomas Lee, M.D., and Plaintiff's treating neurologist, Matthew Loftspring, M.D., testify that her injuries were sustained in the collision.

This matter is set for jury trial on August 19, 2019.

## II.   RELEVANT FACTUAL RECORD

### A.  Expert Opinion Testimony

As Plaintiffs' medical expert and Ms. Ray's treating surgeon, Dr. Lee attested, based on a reasonable degree of medical certainty, Ms. Ray's neck and back injuries were caused by the collision. *See* **Exhibit 1**, *Depo. of Thomas K. Lee, M.D.*, 40:22-41:3; 76:17-24. Dr. Lee testified that Ms. Ray is a person who would be particularly susceptible to injury in this collision because she had a prior back fusion in 2000 and based on the degree of degenerative changes that she had in her spine prior to the collision. **Exhibit 1**, 77:1-80:3.

In addition, Matthew Loftspring, M.D., Ms. Ray's treating neurologist, testified based on a reasonable degree of medical certainty Ms. Ray's chronic traumatic headaches are due to the collision. **Exhibit 2**, *Depo. of Matthew Loftspring, M.D.*, 34:7-23, 56:18-57:2.

Defendants hired biomechanical engineer, Douglas Morr, to "review the available discovery materials, complete the appropriate research, and perform an accident reconstruction

analysis of the contact phase of this MVA, as well as biomechanical analysis of the kinematic and kinetic exposure of Ms. Ray in the subject accident." *See* **Exhibit 3**, *Expert Report of Douglas Morr, pg. 1*. Mr. Morr is not a medical doctor, nor does he have any formal medical training. *See* **Exhibit 4**, Douglas Morr, P.E. Curriculum Vitae.

In his October 17, 2018 report, Mr. Morr offered six opinions in total. Opinions four through six are problematic:

> 4. Ms. Ray's kinematic response would not result in any motion beyond normal ranges of motion or beyond that which she would be exposed to during activities of daily living.
>
> 5. Ms. Ray's kinetic exposure would not exceed accepted biomechanical tolerance limits and would be at, or below, her exposure during activities of daily living.
>
> 6. Ms. Ray's kinematic and kinetic exposure in the subject accident is not consistent with causing significant injury.

*See* **Exhibit 3**, pg. 1.

In his March 4, 2019 deposition, Mr. Morr testified that Ms. Ray would not have sustained significant injuries in the collision. *See* **Exhibit 5**, *Depo. of Douglas Morr*, 104:12-106:19. He admitted several important facts that render his medical causation opinions unreliable and irrelevant in this matter:

> 1. Mr. Morr is not a medical doctor, doctor of osteopathy, surgeon, or radiologist, nor does he have any medical training (**Exhibit 5**, 45:10-21);
>
> 2. Mr. Morr did not review the medical opinions asserted in the deposition testimony of Dr. Lee (**Exhibit 5**, 46:21-47:2);
>
> 3. Mr. Morr assumes Ms. Ray hit her head during the collision (**Exhibit 5**, 48:9-13);
>
> 4. Mr. Morr claims that the force applied to Ms. Ray's vehicle was sufficient to cause it to move and rotate (**Exhibit 5**, 57:21-58:4);
>
> 5. Mr. Morr claims that the impact in this accident would not result in any motion beyond normal ranges of motion or beyond that which she would be exposed to during activities of daily living (**Exhibit 5**, 90:10-91:15; and

3

      6.    Mr. Morr claims that Ms. Ray's "head acceleration does not exceed activities of daily living" (**Exhibit 5**, 111:19-24).

In addition, his penultimate injury causation opinion (opinion #6 above) in short is that he looked at the <u>Abbreviated Injury Scale</u>, which is a biomechanical engineering publication, fit Ms. Ray's injury onto the scale, determined the amount of force it would take to cause those injuries, and cross-referenced that number with the forces he calculated in the injury. Based on this, Mr. Morr concludes that Ms. Ray's injuries were not caused by the collision. **Exhibit 5**, 104:12-107:15).

In short, Mr. Morr opines that Ms. Ray did not sustain her injuries in the collision. Yet, it is the consensus of all the medical experts who testified herein Ms. Ray sustained her neck, back and head injuries as a result of the collision.

### B.  Defendants Failed To Name A Medical Expert

On October 17, 2018, Defendants disclosed Mr. Morr as their retained engineering expert. Thereafter, Plaintiffs supplemented discovery with additional medical records. Based on the supplemental records, defense counsel asked for additional time to name a medical expert. Plaintiffs' counsel agreed and parties filed a joint motion to extend the expert disclosure/deposition deadlines. Despite the extension, Defendants never disclosed a medical expert. Defendants rely solely on their biomechanical engineer to rebut Plaintiffs' causation testimony.

### III.  LAW AND ARGUMENT

#### A.  Standard for Exclusion of Expert Testimony

Under Rule 702 of the Federal Rules of Evidence, "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony

is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed.R.Evid. 702. Whether Mr. Morr's opinions are admissible under Fed. R. Evid. 702 is controlled by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).

A party may present expert medical testimony if the expert's opinion is scientifically valid and it will assist the jury. *O'Conner v. Commonwealth Edison Co.,* 13 F.3d 1090, 1106 (7th Cir. 1994); *citing Daubert,* 509 U.S. at 589–93. Under *Daubert*, a trial judge is required to ensure that any scientific testimony or evidence admitted is not only relevant, but also reliable. *Rains v. PPG Industries, Inc.,* 371 F.Supp.2d 829, 831 (S.D. Ill. 2004). Expert opinions "must be supported by appropriate validation—i.e., 'good grounds,' based on what is known." *Daubert,* 509 U.S. at 590. This gatekeeping function allows the courts to separate expert opinion evidence based on "good grounds" from subjective speculation that masquerades as scientific knowledge. *Caraker v. Sandoz Pharm. Corp.,* 172 F. Supp. 2d 1018 (S.D. Ill. 2001); *citing Glastetter v. Novartis Pharm. Corp.,* 252 F.3d 986 (8th Cir. 2001). Thus, trial judges as gatekeepers must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert,* 509 U.S. at 592-593.

District court judges "enjoy wide latitude and discretion when determining whether to admit expert testimony." *Wintz by & Through Wintz v. Northrop Corp.,* 110 F.3d 508, 512 (7th Cir. 1997). The proponent of the expert testimony must establish its admissibility by a preponderance of the evidence. *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001).

5

### B. Mr. Morr's Testimony Fails to Meet *Daubert*'s Two-Pronged Test

Once the Court determines the issues warrant technical or scientific expert testimony, the *Daubert* standard calls for a two-pronged test. First, the Court must determine whether the expert is qualified by "knowledge, skill, experience, training, or education" that would allow the expert to render opinions on the subject matter. *Daubert,* 509 U.S. at 588, Fed. R. Evid. 702. Here, Mr. Morr's qualifications do not surpass the threshold inquiry. It is certain that Mr. Morr has no formal medical training. He has no experience providing medical diagnosis of a patient's physical injuries or determining a patient's susceptibility to injury. He is not a medical doctor and his field of study, biomechanical engineering, does not include medical diagnosis. Thus, Mr. Morr is <u>not</u> qualified to give medical testimony based on knowledge, skill, experience, training, or education.

Second, assuming *arguendo* that Mr. Morr is qualified as an expert in this matter, his opinions and testimony fail the second prong of the test regarding the quality of the opinions. Opinion testimony is allowed if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702. Here, Mr. Morr did not read testimony from any of Ms. Ray's medical doctors. He did not examine her. He merely concludes that the forces of the impact do not exceed that of the forces exerted on the body during activities of daily living, and a person "like Ms. Ray" would probably not be injured while performing activities of daily living. Further, while Mr. Morr claims that the impact was severe enough to cause Ms. Ray to hit her head inside the vehicle, it is not probable that she would have sustained injury. Mr. Morr's testimony is inadmissible as it fails all three elements of the second-prong test.

### C. Federal Courts Have Excluded Specific Injury Causation Testimony from Biomechanical Engineers

*1. The Seventh Circuit previously ruled an engineer is not qualified to testify as to the medical causation of a party's injuries.*

In *Jones v. Lincoln Electric Co.*, plaintiff moved to bar testimony from defendant's liability expert. In that case, plaintiff filed a product liability action against various manufacturers of welding rods after he sustained neurological injuries as a result of his exposure to manganese fumes emitted from the rods. *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 713 (7th Cir. 1999). Defendants hired Dr. Eager, a professor of materials engineering, to testify as an expert witness to assess the chemical composition as well as a welder's exposure to the fumes. *Id.* at 720. Plaintiff challenged Dr. Eager's testimony to the extent that it was medical in nature. *Id.* at 723. Dr. Eager's testimony included an opinion of the toxicity of manganese fumes and the lung's ability to absorb manganese in those fumes. *Id*. Plaintiff argued that Dr. Eager was not a medical doctor, nor did he indicate that he had proper experience in assessing the toxicology or health effects of manganese on the body, aside from his participation in joint research with a medical doctor. *Id.* at 724. The court held that Dr. Eager lacked sufficient expertise to testify about medical conclusions, and his testimony should have been barred by the district court. *Id*.

Similarly, here, Defendants offer a mechanical engineering expert who speculates as to the medical causation of Ms. Ray's injuries. Mr. Morr attempts to offer testimony regarding the source, or rather, what was *not* the source, of Ms. Rays' injuries. Since Mr. Morr is not a medical expert and has no experience in the field of medicine, this Court should rule consistently with the *Jones* case that an engineer is not qualified to give opinions as to the medical causation of injuries.

2. *The Sixth Circuit* Smelser *Rule and Its Progeny*

The Sixth Circuit follows the rule in *Smelser* and its line of cases, which adopted the distinction between specific and general causation; therefore, courts following this rule typically exclude biomechanical engineers' testimony and opinions that concern injury causation. *Smelser v. Norfolk S. Ry.*, 105 F.3d 299, 305 (6th Cir. 1997). Similarly, other District Courts have barred biomechanical experts from testifying as to medical causation of whether the forces in the accident caused plaintiff's specific injuries, while allowing them to testify as to the forces involved in a collision in general. *Smelser*, 105 F.3d at 305 (biomechanics expert could not testify about the cause of plaintiff's specific injuries); *Kelham v. CSX Transp., Inc.*, No. 2:12-cv-316, 2015 U.S. Dist. LEXIS 93669, at *13, 2015 WL 4426027 (N.D. Ind. July 17, 2015); *Braxton v. DKMZ Trucking, Inc.*, No. 4:13-cv-1335-JCH, 2015 U.S. Dist. LEXIS 17825, at *9, 2015 WL 630297 (E.D. Mo. Feb. 13, 2015).[1] Not all District Courts follow the *Smelser* Rule, yet the facts here underscore the invalidity and inadmissibility of Mr. Morr's causation opinions justifying application of *Smelser*.

**D. Mr. Morr's Opinions Are Outside His Field and Fail to Consider Ms. Ray's Susceptibility to Injury**

Under the Federal Rules of Evidence 702, an expert medical opinion must have a scientific or epidemiological foundation. Fed.R.Evid. 702. Further, to serve as the sole basis for a conclusion that an act was the proximate cause of the plaintiff's injury, an expert must be able to testify with a reasonable degree of medical certainty that proximate cause existed. *Wintz By and Through Wintz v. Northrop Corp.,* 110 F.3d 508, 515 (7th Cir. 1997). District judges in the Seventh Circuit have

---

[1] Plaintiff's counsel represented the plaintiff in the *Braxton v. DKMZ Trucking, Inc.* case where counsel successfully excluded specific medical causation opinions proffered by Mr. Morr's colleague at S.E.A., Brian Tanner, P.E. before Judge Hamilton in the U.S. District Court for the Eastern District of Missouri. That case involved a rear-end trucking case in which the defense theory was that the impact was not significant enough to cause the injuries. Coincidently, Dr. Lee was also the treating surgeon and defense failed to name a medical expert to oppose Dr. Lee's testimony.

cautioned "courts must be particularly wary of unfounded expert opinion when medical causation is the issue." *Aurand v. Norfolk S. Ry. Co.,* 802 F. Supp. 2d 950, 953 (N.D. Ind. 2011). Mr. Morr steps wholly outside of his expertise in his assertions Ms. Ray did not sustain her injuries in the collision.

Plaintiffs do not dispute that Mr. Morr is qualified in his field of biomechanics and accident reconstruction. However, "a district court is not required to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."[2] *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997). In his report and deposition testimony, Mr. Morr does not claim that Ms. Ray suffered *no* injuries as a result of the collision; he opines that she did not suffer her *significant* injuries:

> Q. So you're saying a significant injury, which we defined on the scale, it's your opinion that a significant injury is not probable, correct?
> A. Absolutely.
> Q. Okay. Is it also your opinion that an injury that is lower on the scale than a significant injury is not probable?
> A. Yes.
> Q. Okay. Do you believe it is possible that someone like Miss Ray would suffer an injury under the forces in this collision, it would just be on the lower scale, if at all?
> A. Yes.

**Exhibit 5**, 106:22 to 107:9.

This testimony renders Mr. Morr's opinions even more problematic because he opines as to the *degree of injury* that Ms. Ray suffered in the collision—veering headfirst into the medical field.

Indeed, Dr. Lee testified that Ms. Ray is a person who is particularly susceptible to injury in this collision because she had a prior back fusion in 2000 and based on the degree of degenerative changes that she had in her spine prior to the collision. **Exhibit 1**, 77:1-80:3. Mr.

---

[2] Google returns that *ipse dixit* translates to "a dogmatic and unproven statement." Plaintiffs' counsel must brush up on her Latin.

9

Morr not only fails to address the medical significance that Ms. Ray had a prior lumbar fusion or that she had advanced degenerative changes in her spine; but also, how those conditions relate to her likelihood of injury in this collision. Mr. Morr testified that he disregarded the fact that Ms. Ray had a prior lumbar fusion because she reported to Dr. Lee that she had no restrictions in her daily life prior to the collision. **Exhibit 5**, 102:17-103:9. Therefore, the prior fusion does not factor into his analysis because he believes the collision did not cause forces over and above those of daily life. However, Dr. Lee specifically described in his deposition how a fusion causes the spine to react more stiffly to movement and therefore, rendering Ms. Ray more susceptible to injury under normal circumstances. **Exhibit 1**, 77:9-78:3.

It is clear that the purpose of Mr. Morr's testimony is to counter Plaintiff's medical testimony without retaining a medical expert. This Court should find that Mr. Morr's medical causation findings are speculative, extrapolated conclusions rather than analyses specific to Ms. Ray and her conditions at the time of the impact. Thus, this Court must strike Mr. Morr's injury causation testimony.

### IV. CONCLUSION

Based on the foregoing and pursuant to the Federal Rules of Evidence, Mr. Morr is not qualified by knowledge, skill, experience, training, or education to testify as to medical causation of Ms. Ray's injuries. Further, it is clear that Mr. Morr's testimony and opinions do not constitute reliable or relevant expert testimony. His theory of Ms. Ray's medical causation is outside his field of biomechanical engineering. The methods he utilized as well as the facts and data on which he relied to provide his opinions are not based on the facts of this case—namely, Ms. Ray's specific susceptibility to injury. Thus, Mr. Morr's testimony fails to meet the *Daubert* standard for admissibility and this Court must excluded it from the jury.

WHEREFORE, Plaintiffs Sheryl and Kirk Ray respectfully request that this Court issue an Order granting their Motion to Strike Injury Causation Testimony and Opinions of Defense Expert, Douglas Morr, P.E. and for any further relief that this Court deems necessary and proper under the circumstances.

Respectfully submitted,

**THE SIMON LAW FIRM, P.C.**

By: */s/ Erica B. Slater*
John G. Simon, #6195127
Erica B. Slater, #6307675
800 Market Street, Suite 1700
St. Louis, Missouri 63101
 Ph. (314) 241-2929
 Fx. (314) 241-2029
jsimon@simonlawpc.com
eslater@simonlawpc.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 18, 2019, a copy of the foregoing document was electronically filed with the United States District Court for the Southern District of Illinois, with service by operation of the Court's electronic filing system to:

Christopher P. Leritz
Kelly Kirkbride
LERITZ & PLUNKERT, P.C.
555 Washington Ave., Suite 1600
St. Louis, MO 63101
cleritz@leritzlaw.com
kkirkbride@leritzlaw.com
*Attorneys for Defendants*

   */s/ Erica B. Slater*